UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

CASE NO.: 0:19-cv-61536-WPD

CEASAR FLETE, on behalf of himself
and others similarly situated,

      Plaintiff,

v.

ALL AMERICAN FACILITY MAINTENANCE
INC., A Florida Profit Corporation, and
CHRISTOPHER BREWER, individually,

      Defendants.

_____/

## JOINT MOTION AND BRIEF IN SUPPORT OF
## APPROVAL OF SETTLEMENT

The parties move the Court for an order approving the settlement agreement proposed by the parties. The reasons and bases for approval are set forth below in the supporting memorandum.

WHEREFORE, the parties request that the Court:

a. Find that the proposed settlement, including payments to each Opt-In Plaintiff, the attorney's fees and costs, and all other terms of the parties' Settlement Agreement, is fair and reasonable, and

b. enter a final order approving the proposed settlement and dismissing the case with prejudice.

## MEMORANDUM OF LAW

**I.    The Nature of the Case and Case History.**

Plaintiff Flete, individually and on behalf of similarly situated employees of the Defendants, filed his Complaint on June 20, 2019 (ECF No. 1). Plaintiffs alleged violations of the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., based on the Defendants failure to pay full and proper overtime compensation.  On November 14, 2019, Defendant, All American Facility Maintenance Inc. ("AAFM") filed its Answer and Affirmative Defenses. *See* ECF No. 13. Subsequently AAFM filed another Answer and Affirmative Defenses, and Defendant Christopher Brewer ("Brewer") filed his Answer and Affirmative Defenses on December 23, 2019. *See* ECF Nos. 24-25.

Plaintiffs' filed a motion for conditional certification (ECF No. 43), which Defendants opposed. *See* ECF No. 53.  The Court granted Plaintiffs' motion, authorizing notice to be sent. *See* ECF No. 55.  Approximately thirty two (32) individuals, including Mr. Flete, have joined this case. As stated in the consent to join the case signed by each Opt-In Plaintiff, each designated Plaintiffs' counsel to represent them.  Each Opt-In Plaintiff also designated Plaintiff to make decisions for them regarding all matters concerning the litigation, including negotiating a resolution of their claims.

During the course of the litigation, the parties engaged in extensive factual investigation and discovery relating to the claims of the Plaintiffs and the Opt-In Plaintiffs in the case, including interviewing witnesses, propounding and responding to written discovery, conducting depositions, and filing substantive dispositive motions.  The parties have vigorously litigated this case and they have conducted extensive discovery and a thorough investigation into and evaluation of the law and facts relating to matters set forth in this action.

The parties mediated the case before a certified mediator on February 26, 2021.  At that mediation, the parties reached a settlement of the case which is reflected in the Settlement Agreement ("Settlement Agreement").  *See* **<u>Exhibit "A."</u>**

The Settlement Agreement provides for payment of the total sum of $225,000.00.  Of this

total sum, $50,596.21 is to be paid to the Plaintiffs and Opt-In Plaintiffs for their alleged damages and allocated to each individual based upon various factors, including dates of employment, rates of pay, and opt-in dates.  The Settlement Agreement further provides for payment of a sum of $174,403.79 to Plaintiffs' counsel as attorney's fees and costs.  The attorney's fees and costs were separately negotiated, and the parties agree that Plaintiffs' Counsel shall be paid this amount.  In exchange for this consideration, the Plaintiffs and Opt-In Plaintiffs have agreed to release their claims for overtime asserted in the Lawsuit, and to dismiss the case with prejudice.

The Defendants have agreed to the settlement for the purpose of efficiently resolving this litigation and thereby saving further litigation expenses.  Defendants do not admit the alleged violations and maintain that they at all times acted in good faith and without knowledge of or participation in any alleged wrongdoing.  The Plaintiffs have agreed to the settlement because they believe that it represents a fair, adequate and reasonable settlement of the case under all circumstances and takes into account the risks and costs of going forward with the case.

## II.      Approval of FLSA Collective Action Settlements.

The Eleventh Circuit has held that FLSA claims may only be settled or compromised in one of two ways: supervision by the Secretary of Labor under 29 U.S.C. § 216(c), or court approval.  *Lynn's Food Stores, Inc. v. U.S. US Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982); *see Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714 (E.D. La. 2008) (containing an extended discussion of FLSA settlements, approval, and the differences between FLSA class actions and Fed. R. Civ. P. 23 class actions).

As stated in *Lynn's Foods*, the court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions."  679 F.2d at 1355.  The purpose of the requirement that there be a "bona fide dispute" is to ensure that the parties are not

"negotiating around the clear FLSA requirement of compensation for all hours worked, minimum wages, maximum hours, and overtime." *Collins*, 568 F. Supp. 2d at 719.  In short, the court must find that there is "some doubt" the plaintiffs would succeed on the merits of their claims.  *Id.* However, as stated in *Lynn's Foods*, "[i]f a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Foods*, 679 F.2d at 1354.  Courts are to review FLSA settlements with a strong presumption in favor of finding a settlement fair.  *See Bonetti v. Embarq Management Co.,* 715 F.Supp.2d 1222, 1227 (M.D. Fla. 2009) ("[i]f the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable.").

A.      **There Exists a Bona Fide Dispute.**

There exists a bona fide dispute in this case over several issues, including the Defendants' "administrative" and "professional" employee exemption defenses under 29 U.S.C. § 213(a)(1), the computation of damages, the number of overtime hours worked by each plaintiff, the "good faith" defenses under 29 U.S.C. §§ 259 and 260, and the "willfulness" requirement to trigger the third year of liability under 29 U.S.C. § 255.  The parties believe there are bona fide disputes on all of the above issues, disputes that would have to be resolved by summary judgment or a trial. The parties recognize that this would require substantial time, effort, and expense, and present significant risks for both parties.

Based upon the foregoing, there are clearly "bona fide" disputes in this case.

B.      **The Settlement Is Fair and Reasonable.**

The existence of a "bona fide" dispute is a significant indicator that the settlement is fair

and reasonable.  The Court should further look at the "strength and nature of the claim in light of the possible defenses." *Collins v. Sanderson Farms*, 568 F. Supp. 2d at 719 n. 6, quoting *Brask v. Heartland Automotive Svs.*, 2006 WL 2524212, at *2 (D. Minn. 2006).   However, in undertaking this analysis the court should keep in mind the policy favoring settlement as the preferred means of resolving cases and the "strong presumption" in favor of finding a settlement to be fair.  *Id.*; *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).   "A settlement is in large measure a reasoned choice of a certainty over a gamble, the certainty being the settlement and the gamble being the risk that comes with going to trial." *Paradise v. Wells*, 686 F. Supp. 1442, 1446 (M.D. Ala. 1988).  It is not "whether the proposed consent decree is the best possible deal," but whether it is "at a minimum, fair, adequate and reasonable." *Id*. at 720.

Based upon the factors described herein, the parties believe that the settlement is fair and reasonable.

The settlement provides for the Defendants to pay in settlement of all claims in the case the amount of $225,000.00, which is allocated as follows: $50,596.21 is to be paid to the Plaintiff and Opt-In Plaintiffs for their alleged damages and payment of a sum of $174,403.79 to Plaintiffs' counsel as attorney's fees and costs.  The attorney's fees and costs were separately negotiated, and the parties agree that Plaintiffs' Counsel shall be paid this amount.

The application of these objective factors ensures that each Plaintiff is treated fairly.  The individual settlement payments represent a reasonable approximation of the overtime hours that the Opt-In Plaintiffs worked.  The settlement also reflects an appropriate discount for anticipated challenges in establishing willfulness and liquidated damages, as Defendants alleged to have consulted with a lawyer regarding the pay practice at issue and have produced certain correspondence regarding same during discovery.  Accordingly, the settlement represents an

excellent result for all Opt-In Plaintiffs, inasmuch as it is the amount each could reasonably expect to recover if they had prevailed at trial.  Moreover, all or some of them could have recovered nothing if they had taken the case to trial.

Furthermore, Defendants assert that they hired counsel with regard to the pay practice at issue, and, in support of same, produced documentation supporting their hiring of counsel relative to the pay practice at issue.  Defendants, therefore, argue the pay practice was correct.

Finally, while Fed. R. Civ. P. 23 does not control Rule 216(b) collective actions, in deciding whether an FLSA settlement is fair and reasonable, courts have considered the following additional factors that have been utilized in Rule 23 class actions: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives and absent class members." *Collins*, 568 F. Supp. 2d  at 722.  The following discusses these factors starting with the sixth factor.

**1.      The Opinions of Plaintiffs' Counsel, Named Plaintiffs, and Opt-In Plaintiffs.**

**a.      Opinion of Plaintiffs' Counsel.**

Plaintiffs' Counsel believes that the settlement is fair, adequate, and reasonable, and represents an excellent result for the Plaintiffs.  The settlement provides significant monetary relief to Opt-In Plaintiffs in light of the overtime allegedly due, and the various defenses raised by the Defendants to recovery and the amount of recovery.  Based upon these factors, it is Plaintiffs' Counsel's reasoned judgment that the settlement is fair, adequate and reasonable. *Collins*, 568 F. Supp. 2d at 727 ("The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement.").

### b. Opinion of Named Plaintiffs.

The Plaintiffs' representative, Ceasar Flete, has signed the Settlement Agreement, showing his support for it.  He actively participated in the mediation and settlement negotiations and is fully aware of the various factors considered in the negotiation of the settlement and the arrival of the settlement amounts for each Plaintiff and the attorney's fees and costs.

### 2. The Existence of Collusion Behind the Settlement.

There has been no collusion behind the settlement and there has been no allegation of any. The parties participated in a full-day mediation with an experienced mediator to negotiate the settlement terms and spent many hours revising and exchanging drafts of settlement documents to reach an arm's length settlement.  The proposed settlement is the product of vigorous litigation and extensive negotiation.

### 3. The Complexity, Expense, and Likely Duration of the Litigation.

The case presents complex legal and factual issues.  As stated, the parties engaged in significant discovery, including written discovery and many depositions.  Further, summary judgment motions were filed as was Defendants' decertification motion.  There would be a trial on the merits of issues not resolved at summary judgment, and potential subsequent hearings and/or separate proceedings on damages would have been lengthy, time consuming, and expensive, and would likely result in protracted appellate proceedings lasting many, many years.

### 4. The Stage of the Proceedings and Amount of Discovery Completed.

At the time of the settlement, the case was in a relatively advanced stage.  During the course of the litigation, the parties engaged in extensive factual investigation and formal discovery relating to the claims of the Plaintiffs and the Opt-In Plaintiffs in the case, including interviewing witnesses, depositions, propounding and responding to discovery, and the filing of dispositive

motions.   The parties have vigorously litigated this case and they have conducted extensive discovery and a thorough investigation into and evaluation of the law and facts relating to matters set forth in this action.  The stage of the proceedings demonstrates that the settlement is based upon an adequate investigation and evaluation of the relative strengths and weaknesses of both parties' cases.

**5.     The Range of Possible Recovery**

The settlement in this case is well within the range of possible recovery.  As noted above, the settlements amounts represent payment of the amount of overtime compensation each individual would be entitled to at trial. The settlement also reflects an appropriate discount for anticipated challenges in establishing the Defendants' "willfulness" as required by 29 U.S.C. § 260.  Accordingly, the settlement represents an excellent result for all Opt-In Plaintiffs.

**6.     The Probability of the Plaintiffs' Success on the Merits.**

In entering into the settlement, the Plaintiffs and their counsel have considered the likelihood of success at trial.  While the Plaintiffs believe there was a likelihood of success, Defendants vigorously dispute the issue of liability and believe they have strong evidence showing willfulness and liquidated damages are not applicable.   There were also substantial disputes relating to the number of overtime hours worked by the Plaintiffs and whether the Plaintiffs could recover liquidated damages and prove "willfulness."  These issues pose significant obstacles to ultimate success and the amount of the recovery that could be obtained.  Therefore, the settlement is in the best interest of the Opt-In Plaintiffs and is fair and reasonable.

**IV.     The Attorney's Fees and Costs Paid to Plaintiffs' Counsel.**

The Settlement Agreement provides that Plaintiffs' counsel will receive $174,403.79 in payment of attorney's fees and costs.   These amounts were negotiated separately from those

amounts proposed to be paid to the Plaintiffs and Opt-In Plaintiffs.  These amounts are fair and reasonable, given the fees and costs incurred in this matter, as well as Plaintiffs' Counsel's extensive experience litigating FLSA collective actions, the Defendants' vigorous defense, and the excellent results obtained on behalf of Plaintiffs and the Opt-In Plaintiffs.  *See* Declaration of Noah E. Storch, Esq., attached as **"Exhibit B."**   As stated in *Vogenberger v. ATC Fitness Cape Coral, LLC*, Case No. 2:14-cv-436-FtM-29CM, 2015 WL 1883537, at *4, (M.D. Fla., Order of April 15, 2015), an FLSA case, "[a]lthough the Court must consider the reasonableness of any award of attorney's fees, it is not required to conduct an in-depth analysis of the award unless it is unreasonable on its face."  2015 WL 1883537, at *5 (finding the requested fees reasonable "upon consideration of the time and effort spent by Plaintiffs' counsel, his experience litigating FLSA collective actions, as represented by the parties, and the time and effort by Plaintiffs' counsel that still will be necessary to effectuate the settlement"); *see also King v. My Online Neighborhood, Inc.*, No. 6:06-cv-435-Orl-22JGG, 2007 WL 737575, at *4 (M.D. Fla. Mar. 7, 2007).  Defendants have agreed to this payment.

*(Remainder of page intentionally left blank)*

## VI.    Conclusion

Based upon the foregoing, the parties request that the Court enter an order finally approving the settlement agreement proposed by the parties, Plaintiffs' attorney's fees and costs, and all other terms of the parties' Settlement Agreement, and dismiss this action with prejudice.  A proposed order is filed herewith.

Dated this 12th day of March, 2021.

| | |
|---|---|
| Respectfully Submitted,<br><br>***/s/ Noah E. Storch***<br>Noah E. Storch, Esq.<br>Florida Bar No. 0085476<br>RICHARD CELLER LEGAL, P.A.<br>10368 West State Road 84, Suite 103<br>Davie, Florida 33324<br>Telephone: (866) 344-9243<br>Facsimile: (954) 337-277<br>E-mail: noah@floridaovertimelawyer.com<br><br>*Counsel for Plaintiffs* | Respectfully submitted,<br><br>***/s/ Kevin P. Yombor***<br>Kevin P. Yombor, Esquire<br>Florida Bar No. 111827<br>KAUFMAN DOLOWICH & VOLUCK, LLP<br>One Financial Plaza<br>100 S.E. 3rd Ave., Suite 1500<br>Fort Lauderdale, FL 33394<br>Telephone: (954) 302-2360<br>Fax: (888) 464-7982<br>Email: Kyombor@kdvlaw.com.com<br><br>*Attorneys for Defendants* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of March, 2021, I electronically filed the foregoing with the Clerk of the Court by using the Court's CM/ECF filing system, which I understand will send a notice of electronic filing to all counsel of record.

***/s Noah E. Storch***
Noah E. Storch, Esq.

# EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is entered into by and between the Parties, Plaintiff, Ceasar Flete ("Named Plaintiff"), in his individual capacity and in his representative capacity on behalf of all Opt-In Plaintiffs in the Lawsuit described below ("Plaintiffs"), and Defendants, All American Facility Maintenance Inc. ("AAFM") and Christopher Brewer, Individually, ("Brewer") (AAFM and Brewer collectively referred to as "Defendants").

WHEREAS, Named Plaintiff is a representative of all Plaintiffs who have joined as Opt-In Plaintiffs in the case *Ceasar Flete, on behalf of himself and others similarly situated, v. All American Facility Maintenance Inc. and Christopher Brewer, Individually,* Case No. 0:19-cv-61536-WPD, pending in the United States District Court for the Southern District of Florida ("Lawsuit");

WHEREAS, the Parties have engaged in extensive written discovery, conducted depositions, drafted competing dispositive motions on varying issues, and have conducted a thorough investigation into the Plaintiffs' claims and Defendants' defenses thereto;

WHEREAS, the Opt-In Plaintiffs expressly designated the Plaintiff to make decisions on their behalf concerning the Lawsuit, including negotiating a resolution of their claims, in their Consent to Join forms filed with the Court;

WHEREAS, the Parties participated in a full-day settlement mediation conference with mediator Susan Eisenberg on February 26, 2021, at which time the parties reached a resolution of the Lawsuit ("Settlement"); and

WHEREAS, the Parties desire to fully settle the Lawsuit in order to avoid the expense, uncertainty, and distractions of litigation;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, the parties agree, subject to the Court's approval, as follows:

1. **No Admission of Liability or Fault.**   In entering into this Settlement Agreement, Defendants do not admit, and specifically deny, that they have: violated the Fair Labor Standards Act ("FLSA") with regard to overtime compensation.  Neither this Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be construed as an admission or concession by Defendants or the Released Parties of any such violation(s) or failure(s) to comply with any applicable law, who expressly deny any liability, wrongdoing, impropriety, responsibility, or fault whatsoever.

2. **Scope of the Settlement.**  Subject to Court approval, the Settlement shall cover all Opt-In Plaintiffs who have filed Consent to Join forms in the Lawsuit.  There are approximately 32 Opt-In Plaintiffs, including the Plaintiff, Caesar Flete.  A list of all Opt-In Plaintiffs is attached hereto as Exhibit A.

3. **Settlement Amount.** As a settlement of this Lawsuit in exchange for the terms described herein, the Parties have agreed to a settlement of this matter covering all Opt-In Plaintiffs (as defined above in paragraph 2), under which Defendants will pay an "all in" settlement amount of $225,000.00 ("Total Settlement Amount"), which will be allocated and paid as follows:

    a. **Payments to Opt-In Plaintiffs.**

        i. **Allocation of Individual Settlement Payments.** Plaintiffs' Counsel will calculate the individual gross settlement amounts ("Individual Settlement Payments") to be allocated to the Opt-In Plaintiffs identified in paragraph 2. A Settlement Common Fund of $50,596.21 from the Total Settlement Amount shall be apportioned and used to pay all Individual Settlement Payments to the Opt-In Plaintiffs.

    b. **Taxation.** Each Settlement Class member will receive two settlement checks consisting of the following: (a) one half (50%) of each Settlement Class Member Payment will be paid and reported as wages for tax purposes, subject to withholding, with the Settlement Class member receiving an IRS Form W-2; and (b) the other half (50%) of each Settlement Class Member Payment will be treated as a settlement of Plaintiffs' claim for liquidated damages, exemplary damages, and interest, and will be paid and reported on an IRS Form 1099. All amounts for attorneys' fees and costs will be paid to Plaintiffs' Counsel and will be reported on an IRS Form 1099. Defendants shall be responsible for making all appropriate and lawful deductions and disbursing them to the appropriate taxing authorities. Each Settlement Class member shall be responsible for paying any taxes due on his or her settlement amount, other than the employer's share of payroll taxes on the wage payment.

    c. **Attorneys' Fees and Costs.** As part of the mediation and settlement in this matter, the Parties negotiated the amount to be paid to Plaintiffs' Counsel for all attorneys' fees and costs incurred in the Lawsuit separate and apart from the Settlement Common Fund. In settlement of all attorneys' fees and costs incurred by Opt-In Plaintiffs in the Lawsuit, the Parties have agreed that Plaintiffs' Counsel shall be paid the amount of $174,403.79 of the Total Settlement Amount. Plaintiffs' Counsel is taking no payment from the Settlement Common Fund payable to the Opt-In Plaintiffs, and the attorneys' fees and costs are being paid independently based on the time and effort invested by Plaintiffs' Counsel. The Parties shall file a Joint Motion for Approval of the settlement. Defendants agree to Plaintiffs' Motion for Attorneys' Fees and Costs, if required to be filed.

    d. **Timing of Payment.** Within 30 days of the Court's approval of the settlement, Defendants shall deliver all settlement checks to Noah E. Storch, Esq., Richard Celler Legal, P.A., 10368 W. SR 84, Suite 103, Davie, Florida 33324.

e. **Additional Payments.**  Defendants shall be separately responsible for payment of the employer's share of any payroll taxes associated with the Opt-In Plaintiffs' Individual Settlement Payments.  Defendants shall also separately pay the full cost of the settlement mediation conference held on February 26, 2021.

4. **Court Approval.**  The parties' Settlement of this Lawsuit is contingent on final approval of the Settlement by the Court.  The Settlement will become final and effective only when the Court enters an order granting final approval of the Settlement ("Final Approval Order").  The Parties shall jointly recommend to the Court that it approve the terms of this Settlement Agreement by filing a joint Motion with the Court seeking final approval of the Settlement ("Motion") in accordance with *Lynn's Food Stores, Inc. v. United States, US Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982).

   a. **Cooperation.**  The Parties agree to cooperate in negotiating (a) the allocation of the Settlement Class Member Payments, and (b) the Settlement Agreement, settlement approval Motion, and associated documents to be filed with the Court.

5. **Dismissal of Claims.**  Upon entry of the Court's Final Approval Order, all Opt-In Plaintiffs will have their claims for overtime in the Lawsuit dismissed with prejudice.

6. **Scope and Effect of the FLSA Release of Claims Asserted in the Lawsuit.**  In consideration for Defendants' payment of the Total Settlement Amount as set forth in this Settlement Agreement, the Opt-In Plaintiffs shall fully and forever release, settle, compromise, relinquish, and discharge Defendants from any and all claims that were alleged pursuant to the Fair Labor Standards Act ("FLSA") for overtime in the Lawsuit.

7. **Settlement Disputes.**  To the extent that the Parties cannot agree on any additional matters related to the preparation, execution, or enforcement of the Settlement not specifically covered herein, including the drafting of the Settlement Agreement or any other documents provided herein, the Parties agree to utilize the Mediator in this matter, Susan Eisenberg to resolve the same.  The Mediator's determination on any such matters shall be final and binding and not subject to any further review or appeal.  The Parties shall bear their own attorneys' fees and expenses in any matter submitted to the Mediator pursuant to this paragraph.

8. **Enforcement Actions.**  The Court shall have continuing jurisdiction over the terms and conditions of this Settlement Agreement until all payments and obligations contemplated by the Settlement Agreement have been fully carried out.  In the event that one or more of the Parties to this Settlement Agreement institutes any legal actions or proceedings to enforce or implement the provisions of this Settlement Agreement, the successful party or parties shall be entitled to recover from the unsuccessful party or parties' attorneys' fees and costs, including expert witness fees incurred in connection therewith.

9. **Captions and Interpretations.**  Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any provision hereof.  Each term of this

Settlement Agreement is contractual and not merely a recital. The Parties hereto agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive arms-length negotiations between the Parties facilitated by an experienced employment law mediator and that this Settlement Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her or its counsel participated in the drafting of this Settlement Agreement.

10.   **Entire Agreement**.  This Agreement constitutes the entire and integrated agreement between the Parties with respect to the Settlement of the Lawsuit, and all other prior and contemporaneous agreements, representations, warranties, or understandings of the Parties are superseded by this Settlement Agreement.

11.   **No Reliance**.  The Parties acknowledge that they have not relied on any promise, representation, or warranty, express or implied, not contained in this Agreement.

12.   **Assignments**.  The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

13.   **Named Plaintiff Signatories**.  It is agreed that because the Opt-In Plaintiffs are so numerous, it is impractical to have each Opt-In Plaintiff execute this Settlement Agreement.  The execution by Plaintiff of this settlement Agreement shall have the same force and effect as if this Settlement Agreement were executed by each Opt-In Plaintiff.

14.   **Execution in Counterparts**.  This Settlement Agreement may be signed in one or more counterparts, including by copies transmitted via facsimile or electronic delivery.  Upon a party's execution of a counterpart, that counterpart shall be deemed an original, and all signed counterparts shall together constitute one Settlement Agreement.  A facsimile and/or electronic signature shall have the same force and effect as the original signature. All executed copies of this Settlement Agreement and copies thereof shall have the same force and effect and shall be as legally binding and enforceable as the original.

    IN WITNESS WHEREOF, the undersigned have duly executed this Settlement Agreement as of the date indicated below:

Individually and On Behalf of All Opt-In Plaintiffs,

Dated: _____      By:   _____
                                          Ceasar Flete, Plaintiff

4

All American Facility Maintenance Inc

Dated: _3/12/21_

By: _____

Its authorized agent, Defendant

Print: _Chris Brewer_

Christopher Brewer, Individually,

Dated: _3/12/21_

By: _____

Defendant

5

IN WITNESS WHEREOF, the undersigned have duly executed this Settlement Agreement as of the date indicated below:

Individually And On Behalf Of All Opt-In Plaintiffs,

Dated: __Mar 12, 2021__          By: _____
                                       Ceasar Flete (Mar 12, 2021 14:59 EST)
                                     Ceasar Flete, Plaintiff

All American Facility Maintenance Inc

Dated: _____          By: _____
                                     Its authorized agent, Defendant

                                 Print: _____

Christopher Brewer, Individually,

Dated: _____          By: _____
                                     Defendant

5

EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

CASE NO.: 0:19-cv-61536-WPD

CEASAR FLETE, on behalf of himself
and others similarly situated,

     Plaintiff,

v.

ALL AMERICAN FACILITY MAINTENANCE
INC., A Florida Profit Corporation, and
CHRISTOPHER BREWER, individually,

     Defendants.

_____/

**DECLARATION OF NOAH E. STORCH IN SUPPORT OF
JOINT MOTION FOR FINAL APPROVAL OF THE COLLECTIVE ACTION
SETTLEMENT AND APPROVAL OF ATTORNEYS' FEES AND COSTS**

I, Noah E. Storch, declare under 28 U.S.C. § 1746 as follows:

1.     I make these statements based on personal knowledge and would so testify if called as a witness at trial.

2.     I am a Partner at the law firm of Richard Celler Legal, P.A. ("RCL") in Davie, Florida.

3.     Richard Celler Legal, P.A. represents plaintiffs in a wide variety of employment matters, including individual and class action litigation involving wage and hour, discrimination, and harassment claims.

4.     I have been responsible for the prosecution of Plaintiffs' claims on behalf of the Opt-In Plaintiffs in this matter.

5.      I make these statements based on personal knowledge and would so testify if called as a witness at trial.

## **RELEVANT PROCEDURAL HISTORY**

6.      Plaintiff Ceasar Flete, individually and on behalf of similarly situated employees of the Defendants, filed his Collective Action Complaint on June 20, 2019 (ECF No. 1).  Plaintiff alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., based on the Defendants' failure to properly pay overtime to him other similarly situated non-exempt customer service/clerical employees of Defendants.  The Defendants filed Answers denying the allegations in the Amended Complaint (ECF Nos. 24-25).

7.      Plaintiff filed a Motion for Conditional Certification ("Motion") seeking to represent and send notice to a collective of non-exempt customer service/clerical employees who were employed by the Defendants during the time period starting three years prior to the date of the Court's Order. (ECF No. 43).  Defendants opposed the Motion (ECF No. 53).  The Court granted Plaintiff's Motion, authorizing notice to be sent to non-exempt customer service/clerical employees. (ECF. No. 55).

8.      Since the filing of this case, Plaintiff plus 32 individuals have opted into the case as Opt-in Plaintiffs (33 total individuals).  As stated in the consent to join signed by each Opt-In Plaintiff, each designated Plaintiffs' counsel to represent them. Each Opt-In Plaintiff also designated Plaintiffs to make decisions for them regarding all matters concerning the litigation, including negotiating a resolution of their claims.

## **LITIGATION**

9.      During the course of the litigation, Plaintiff's Counsel engaged in extensive factual investigation and formal and informal discovery relating to the claims of the Plaintiffs and the

Opt-In Plaintiffs in the case, in order to obtain information relating to the employment and earnings of each Opt-In Plaintiff.  Plaintiffs propounded and responded to written discovery. Additionally, Plaintiff's Counsel scheduled and conducted seven (7) depositions.  In addition, Defendants conducted the depositions of Mr. Flete and Opt-In Plaintiff Jessica East.

10.     Following discovery, Counsel for Plaintiff filed a Motion for Partial Summary Judgment and Statement of Material Facts on February 25, 2021. (ECF Nos. 91-92). Defendant, Christopher Brewer, filed a Motion for Summary Judgment. (ECF No. 88).   Additionally, Defendants filed a Motion to Decertify. (ECF No. 90).

11.     Furthermore, the parties mediated the case before a certified mediator on February 26, 2021.  At that mediation, the parties reached a settlement of the case which is reflected in the Settlement Agreement and Release ("Settlement Agreement"), attached to the Parties Joint Motion for Approval as Exhibit A.

12.     The Settlement Agreement provides for payment of the total sum of $225,000.00. Of this total sum, $50,596.21 is to be paid to the Plaintiff and eligible Opt-In Plaintiffs for alleged damages and allocated to each individual based upon various factors, including dates of employment in an eligible position, rates of pay, and opt-in dates.  As part of the negotiation and settlement of this matter, the Parties agreed that a total sum of $174,403.79 to Plaintiffs' counsel as attorneys' fees and costs.  The attorney's fees and costs were separately negotiated.   In exchange for this consideration, the Plaintiffs and Opt-In Plaintiffs have agreed to release claims for overtime asserted in the instant lawsuit and to dismiss the case with prejudice.  All terms of the Settlement Agreement are subject to the Court's approval.

### PRE-MEDIATION/SETTLEMENT DISCOVERY

13.     The parties engaged in significant discovery before agreeing to resolve this case.

14.     As the Court is aware, this case has been pending for twenty-one (21) months, just short of two (2) years.

15.     During that time Defendants have produced hundreds of pages of documents, as well as pay and time records for each plaintiff, as well as responsive documents to Plaintiffs' document requests, including corporate policies, training materials, work schedules, payroll records, personnel files, reports, and memoranda, as well responses to Requests for Admissions and Answers to Interrogatories.

16.     Similarly, Plaintiffs also responded to interrogatories and document requests. In addition, interviews were conducted as well as extensive analysis.

## SETTLEMENT NEGOTIATIONS

17.     As noted above, the parties participated in an all-day mediation, on February 26, 2021, with Mediator Susan Eisenberg of Cozen Conner.  The parties executed a Memorandum of Understanding which contained all material terms of the settlement.

18.     Subsequently, the parties drafted a detailed settlement agreement, which incorporated all terms and which all parties have signed.

## TERMS OF SETTLEMENT

19.     The settlement provides for the Defendants to pay in settlement of all claims in the case the amount of $225,000.00, which is allocated as detailed above.  $50,596.21 of the Total Settlement Amount is to be paid to the Plaintiffs and Opt-In Plaintiffs for their alleged damages and allocated to each individual based upon various factors, including dates of employment in an eligible position, rates of pay, and opt-in dates.  The application of these objective factors ensures that each Plaintiff is treated fairly.  Certain Plaintiffs were only employed for a short period during the possible statute of limitations, and thus there are several

individual payments are relatively small.

20.     A payment in the sum of $174,403.79 is allocated to Plaintiffs' Counsel as attorney's fees and costs.  The attorney's fees and costs were separately negotiated.

21.     Plaintiffs' Counsel believes that the settlement is fair, adequate, and reasonable, and represents an excellent result for the Opt-In Plaintiffs.  The settlement provides significant monetary relief to Opt-In Plaintiffs in light of the overtime allegedly due, and the various defenses raised by the Defendants to recovery and the amount of recovery.

22.     Based upon these factors, it is Plaintiffs' Counsel's reasoned judgment that the settlement is fair, adequate and reasonable.  *Collins*, 568 F. Supp. 2d at 727 ("The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement.").

23.     There has been no collusion behind the settlement and there has been no allegation of any.  The parties participated in a full-day mediation with an experienced mediator to negotiate the settlement terms and spent significant time drafting, reviewing, and exchanging drafts of settlement documents to reach an arm's length settlement.  The proposed settlement is the product of vigorous litigation and extensive negotiation.

## ATTORNEY'S FEES AND COSTS

24.     The Settlement Agreement provides that Plaintiffs' counsel will receive $174,403.79[1] in payment of attorney's fees and costs.  These amounts were negotiated separately

---

[1] This is a within the range of typical fee award in a common fund case. *See, e.g.*, *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012)("One-third of the recovery is considered standard in a contingency fee agreement."); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("Class Counsel's request for 33 1/3% of the fund is reasonable and 'consistent with the norms of class litigation…' ") (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)); *Hosier v. Mattress Firm, Inc.*, 2012 WL 2813960, at *4 (M.D. Fla. June 8, 2012) (approving a common fund FLSA settlement which provided 30% of the common fund for attorneys' fees and costs); *Morefield v. NoteWorld, LLC*, 2012 WL 1355573 (S.D. Ga. April 18, 2012)(class settlement approved with 33 1/3 of the common fund payable as attorneys' fees); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011)(approving class settlement

from those amounts proposed to be paid to the Plaintiffs and Opt-In Plaintiffs.

25.    The Settlement Agreement is not conditioned on the award of attorneys' fees, and is subject to Court approval.

26.    These amounts are fair and reasonable, given Plaintiffs' Counsel's extensive experience litigating FLSA collective actions, the Defendants' vigorous defense, and the excellent results obtained on behalf of Plaintiffs and the Opt-In Plaintiffs. In addition, Plaintiffs' Counsel incurred approximately $15,082.94 in out-of-pocket costs prosecuting the litigation, which were incidental and necessary to the representation of the Opt-In Plaintiffs and which include electronic research, Class Administrator fees, postage, photocopies, filing fees and service of process costs.

27.    Plaintiffs' Counsel has vigorously litigated this case and has conducted extensive discovery and a thorough investigation into and evaluation of the law and facts relating to matters set forth in this action.

28.    Plaintiffs' Counsel's experience was directly responsible for bringing about the positive settlement. The Law firm of Richard Celler Legal, P.A. ("RCL") has significant experience prosecuting and/or settling wage and hour class and collective actions.

29.    Since June 2019, Plaintiffs' Counsel has spent more than 385 hours litigating and settling this litigation, not including time spent by Paralegals and Legal Assistants.

30.    RCL has made every effort to avoid duplication of efforts and to have work performed by a paralegal when possible.

---

with one-third of maximum common fund apportioned as attorneys fees); *Gutter v. E.I. DuPont De Nemours & Co.*, No. 1:95–cv–02152–ASG, D.E. 626 at 7 (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees ($1,201,728.42) because they expended significant time and resources on a purely contingent basis under the common fund theory); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 1:99–md–01317–PAS, Doc. No. 1557 at 8–10 (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis).

31.    The hours reported are reasonable for a case of this complexity and size and were compiled from time records maintained by each attorney, paralegal, and support staff person participating in the case.

32.    In our experience, Florida law firms that represent plaintiffs in employment matters, and those law firms that handle such cases in Florida, typically charge their client at least one-third of their gross recoveries when they represent them on a contingency basis, in the context of class and/or collective action litigation.

33.    The requested attorneys' fees are not based solely on time and effort already expended; they are also meant to compensate Plaintiffs' Counsel for time that they will be required to spend administering the settlement in the future. In our experience, administering class and collective settlements of this nature and size requires a substantial and ongoing commitment.

34.    Plaintiffs' Counsel undertook to prosecute this action without any assurance of payment for their services, litigating the case on a wholly contingent basis in the face of tremendous risk. Wage and hour cases of this type are, by their very nature, complicated and time-consuming. Lawyers undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy and resources. Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Plaintiffs' Counsel stood to gain nothing in the event the case was unsuccessful.

35.    To date, Plaintiffs' Counsel has worked without compensation of any kind, and the fee has been wholly contingent upon the result achieved.  Further, the time spent on this case

precluded the undersigned from spending such time working on other matters.

## COUNSEL'S BACKGROUND AND EXPERIENCE

36.    I graduated from the University of Central Florida in 2007 with a Bachelor of Science Degree, and attended the Nova Southeastern University, Shepard Broad Law Center, where I received my Juris Doctor, in 2010. I was admitted to the Florida Bar in 2010, and since that time, have practiced both on the plaintiff and defense side in employment law.

37.    Since 2010, I have practiced in the area of wage hour and employment law with significant experience in providing advice and litigating lawsuits arising under federal and state employment and discrimination laws. To that end, I worked on the defense/management side as an associate at Jackson Lewis, LLP, Littler Mendelson, P.C., and Cole Scott & Kissane, P.A., representing companies in complex FLSA and employment matters until approximately 2016. After leaving the defense/management side of employment law, I joined Richard Celler Legal, P.A., and I am a Partner.

38.    To that end, I have served or am serving as lead counsel in Wage and Hour Class/Collective Actions in the Middle and Southern District of Florida.

39.    I have tried cases in Federal and State Courts, as well as arbitrations.

40.    Based on my qualifications, and experience, my reasonable hourly rate has been held to be approximately $450 per hour.

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed on this 12th day of March 2021.

*Noah E. Storch*
_____
NOAH E. STORCH